Linda D. **SULLIVAN** and Ronald **Gibson, Appellants,**

v.

Misty J. **TUCKER; William Shane Sullivan and Cabinet for Families and Children, Appellees.**

No. 1999–CA–002168–MR.

Court of Appeals of Kentucky.

Aug. 4, 2000.

Rehearing Denied Oct. 6, 2000.

David L. Yewell, Kamuf, Yewell & Pace Owensboro, for Appellant.

Mark Pfeifer, Thacker, Bickel, Hodskins, & Thacker, Owensboro, for Appellees.

Before: COMBS, KNOPF, and TACKETT, Judges.

*OPINION*

KNOPF, Judge:

Linda Sullivan and Ronald Gibson appeal from a July 29, 1999, order of Daviess Circuit Court denying, in effect, their motion for a declaration of status. They seek to be declared "de facto custodians" of Linda's two grandchildren and maintain that the trial court's refusal to issue such a declaration stemmed from a mis-interpretation of KRS 403.270. Although for reasons somewhat different than those of the trial court, we agree that Linda and Ronald are not entitled to the relief they seek and so affirm the trial court's order.

Linda is the paternal grandmother of two young children, Amber, born May 5, 1995, and Kamron, born May 18, 1997, the children of the appellees, William Sullivan and Misty Tucker. Ronald Gibson is Linda's companion of many years. In October 1997, Linda was awarded temporary custody of the two children by order of the Daviess District Court. William and Misty's relationship had been unstable,

they had become involved in legal and drug-related problems, and they were having trouble caring for their daughters. Even before entry of the temporary custody order, apparently, Linda and Ronald had provided much of the children's care and support. In June 1998, Linda petitioned the Daviess Circuit Court for an award of permanent custody. She alleged that William and Misty continued to be unprepared for parenthood and that the children were in need of a permanent living arrangement. Soon thereafter, however, in August 1998, before the circuit court had ruled on Linda's custody petition, the Daviess District Court rescinded its temporary custody order and returned custody of Amber and Kamron to their parents. The district court's decision was based on the recommendations of a court appointed special advocate and a representative of the Cabinet for Families and Children. Both of those officials believed that William and Misty, who had resumed living together, had sufficiently resolved their problems to be again entitled to custody of their children.

Initially, apparently, Linda resisted the district court's rescission of the temporary custody order, but ultimately she dismissed her appeal of the rescission and in the circuit court withdrew her petition for permanent custody. Instead, she and Ronald both petitioned the circuit court to be recognized and designated as de facto custodians of the two girls pursuant to KRS 403.270.

The trial court acknowledged Linda and Ronald's deep commitment to the children and their substantial contribution to the children's welfare,[1] but ruled that de facto custodianship requires "actual possession" of the child, and thus that, even if Linda and Robert could formerly have been deemed de facto custodians, that status had lapsed with the return of the children to the parents. It is from this ruling that Linda and Ronald appeal. They maintain that, once established, de facto custodianship persists and gives the de facto custodian an abiding right to participate in custody-related decisions affecting the child. In corroboration of this right, they are entitled, they insist, to a declaration of their status as de facto custodians. We disagree.

KRS 403.270 was amended as of July 15, 1998, to provide in pertinent part as follows:

(1) (a) As used in this chapter and KRS 405.020, unless the context requires otherwise, "de facto custodian" means a person who has been shown by clear and convincing evidence to have been the primary caregiver for, and financial supporter of, a child who has resided with the person for a period of six (6) months or more if the child is under three (3) years of age and for a period of one (1) year or more if the child is three (3) years of age or older or has been placed by the Department for Social Services. Any period of time after a legal proceeding has been commenced by a parent seeking to regain custody of the child shall not be included in determining whether the child has resided with the person for the required minimum period.

(b) A person shall not be a de facto custodian until a court determines by clear and convincing evidence that the person meets the definition of de facto custodian established in paragraph (a) of this subsection. Once a court determines that a person meets the definition of de facto custodian, the court shall give the person the same standing in custody matters that is given to each parent under this section and KRS 403.280, 403.340, 403.350, 403.420, and 405.020.

▬ As the parties acknowledge, the basic effect and most obvious intent of this

---

**1.** They had provided cochlear implant surgery for Amber, for example, and had undertaken her rehabilitative care following that surgery.

statute is to give standing in a present custody matter to non-parents who have assumed a sufficiently parent-like role in the life of the child whose custody is being addressed. Beyond this basic meaning, however, Linda and Ronald maintain that they are presently entitled under the statute to be declared eligible to participate in any and all future custody matters involving Amber and Kamron. We do not read KRS 403.270 as abrogating to this extreme extent the trial court's usual authority to determine on a case-by-case basis the standing of non-parents in custody matters. *Posey v. Powell*, Ky.App., 965 S.W.2d 836 (1998). The construction of KRS 403.270 that Linda and Robert advance implies that the General Assembly intended a radical change in this state's domestic relations law, a change effecting a profound modification of a fit parent's right to care for and raise his or her child in the manner he or she thinks best. *Davis v. Collinsworth*, Ky., 771 S.W.2d 329 (1989). *See also Troxel v. Granville*, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000). Were such a change truly intended, we believe that it would have been clearly expressed. Instead, the statute provides that

> [o]nce a court determines that a person meets the definition of de facto custodian, *the* court shall give the person the same standing in custody matters that is given to each parent under this section .... (emphasis added).

This language ("*the* court," not "every court thereafter"), rather than implying the radical result urged by Linda and Robert, suggests that the determination of de facto custodianship is a matter that must be addressed anew whenever the status is asserted. This is not to say that a prior finding of de facto custodianship has no bearing on a subsequent determination. Nor is it to say, as the trial court opined, that possession of the child is a necessary prerequisite to recognition of de facto custodian status. It· is only to say that a finding of de facto custodianship does not

thereafter have the conclusively presumptive effect Linda and Robert assert.

Indeed, more than this the facts of this case do not permit us to say, for it is a fundamental rule that courts must refrain from deciding matters that have not yet ripened into concrete cases and controversies. Stated otherwise, courts are not authorized to render advisory opinions concerning moot or hypothetical issues. *Commonwealth v. Hughes*, Ky., 873 S.W.2d 828 (1994); *Veith v. City of Louisville*, Ky., 355 S.W.2d 295 (1962); *Louisville Transit Co. v. Department of Motor Transportation*, Ky., 286 S.W.2d 536 (1956). To a considerable extent, however, that is exactly what Linda and Ronald have asked us the trial court to do. Linda's dismissal of her custody petition rendered moot any question concerning her then present right to participate as a de facto custodian in the custody proceeding. And any question concerning her or Ronald's right to such participation in the future is at this point completely hypothetical. The parents, William and Misty, are not alleged to be unfit. Nor is it alleged that Linda and Robert have been at all injured in their rights. There is not even the allegation of a dispute between the parents and the appellants. It is entirely possible, and fervently to be hoped, that no such dispute will ever arise. Absent an actual controversy in which justiciable interests are presently at stake, the trial court's authority to declare the appellants' future "standing" could not be and was not properly invoked. *Freeman v. Danville Tobacco Board of Trade, Inc.*, Ky., 380 S.W.2d 215 (1964); *Commonwealth ex rel. Watkins v. Winchester Water Works Co.*, Ky., 303 Ky. 420, 197 S.W.2d 771 (1946).

Accordingly, we affirm the trial court's refusal to declare Linda and Ronald de facto custodians of Amber and Kamron. That question, beyond the very narrow sense in which we have addressed it, was not being properly before the court. For the same reason, we express no opinion concerning the trial court's construction of

KRS 403.270, but note that, any such construction being unnecessary and inappropriate to this disposition, the trial court's particular construction should not be regarded as *res judicata* or the law of the case in any future dispute between these parties.

For these reasons, we affirm the July 29, 1999, order of the Daviess Circuit Court.

ALL CONCUR.