**Aimee WILLIAMS and Matt Williams, Appellants,**

v.

**Timothy BITTEL, Appellee.**

**Timothy Bittel, Appellant/Cross–Appellee,**

v.

**Aimee Williams and Matt Williams, Appellees/Cross–Appellants.**

Nos. 2007–CA–002568–ME, 2008–CA–001048–ME, 2008–CA–001140–ME.

Court of Appeals of Kentucky.

Nov. 25, 2009.

---

J. Fox DeMoisey (argued), Louisville, KY, for Aimee Williams and Matt Williams.

Angela L. Thompson (argued), Owensboro, KY, for Timothy Bittel.

Before ACREE and CLAYTON, Judges; HARRIS,[1] Senior Judge.

## OPINION

HARRIS, Senior Judge (Assigned).

Aimee and Matt Williams appeal from a Daviess Family Court order entered on December 6, 2007, denying their petition to modify custody and cross-appeal from an order entered May 5, 2008, denying their motion to reconsider the petition. Timothy Bittel appeals from an order entered on May 5, 2008, denying his petition to modify custody and to stay a foreign judgment. These appeals present our Court with three issues of first impression[2]: (1) Whether an out-of-state adoption preempts Kentucky custody orders; (2) Whether a de facto custodian who is granted joint custody rights must continuously meet the de facto custodial requirements in order to maintain standing in custody proceedings; and (3) Whether the

Daviess Circuit Court could properly condition its deference to the Georgia courts on M.K.'s custody and visitation by providing that its prior orders regarding Mr. Bittel's joint custodianship and visitation with M.K. are not affected. After considering the record, the briefs, and counsels' oral arguments, we conclude that the answer to the first two questions is "No" and the answer to the third question is "Yes." Hence, we affirm the Daviess Circuit Court.

No party to this appeal is a biological parent of M.K., who was born to Wendy Kennedy and Billy Pyland[3] on May 5, 1998. While she was pregnant, Kennedy began dating Bittel. The couple later became engaged and moved in together. During this time, Bittel and Kennedy functioned as a family unit and shared all responsibilities and financial burdens, including caring and providing for M.K.

When M.K. was eighteen months old, Kennedy tragically died.[4] Kennedy's sister and brother-in-law, the Williamses, assumed the responsibilities of caring for M.K. Bittel, however, remained extremely involved in the child's life and even moved in with the Williamses in an attempt to help M.K. through the grieving and adjustment process. M.K. also maintained a close bond with Bittel's relatives, whom she considered to be her family. Although both parties admit that the Williamses la-

---

1. Senior Judge William R. Harris sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and Kentucky Revised Statutes (KRS) 21.580.

2. We are aware of the Kentucky Supreme Court's recent opinion in *Mauldin v. Bearden*, 293 S.W.3d 392 (Ky.2009), which addresses some of the matters involved in the present case; however, because the facts and procedural contexts of the present case differ sharply from those of *Mauldin v. Bearden* we

believe it is accurate to characterize the issues in the present case as first impression.

3. Pyland has never had contact with M.K. or provided any financial support for the child. He has remained absent from her life and declined to respond to any custodial court proceedings concerning M.K.

4. Kennedy died during a routine medical procedure. A civil suit alleging medical malpractice resulted in a settlement.

ter asked Bittel to leave their home, the motivation behind the request is disputed.

On May 3, 2000, Bittel petitioned the Daviess Circuit Court for custody of M.K. First, the court found that the Williamses and Bittel were de facto custodians of M.K. Then, both parties were granted joint custody. The Williamses were designated primary residential custodians with liberal visitation given to Bittel. Neither the Williamses nor Bittel appealed.

In August 2006, the Williamses notified Bittel that they intended to move to Savannah, Georgia. Bittel filed a motion to amend the custody arrangement and argued that it was in M.K.'s best interest to remain in Daviess County. In September 2006, prior to the court's ruling on Bittel's motion, the Williamses moved to Georgia.

On July 20, 2007, Bittel withdrew his motion for custody modification and moved the court for specific visitation. Six days later, the Williamses filed a motion to modify custody.[5] The motion was denied based upon the Williamses' failure to support their motion with an affidavit, as required by KRS 403.350. Following a hearing and a recommendation by the Domestic Relations Commissioner, the court granted Bittel's motion for specific visitation and carefully outlined a visitation schedule.

On October 12, 2007, the Williamses moved the court to reconsider their petition for custody modification. Following a November 13, 2007, hearing, the court entered an order on December 6, 2007, denying the motion. On December 17, 2007, the Williamses filed a notice to appeal the December 6, 2007, order.

During the pendency of the custody action in Kentucky, the Williamses initiated and completed an adoption of M.K. in Georgia. Bittel attempted to intervene in the adoption. Because Georgia law only allows blood relatives standing to intervene in adoption cases[6], Bittel's intervention effort failed.

On March 24, 2008, the Williamses filed the Georgia adoption decree with the Daviess Circuit Court under KRS 403.340. Bittel moved to stay the foreign judgment. On May 5, 2008, the Daviess Circuit Court upheld Bittel's rights as joint custodian of M.K., despite the adoption. It determined that Kentucky courts continued to have custody and visitation jurisdiction but deferred to Georgia as the more convenient forum.

On May 30, 2008, Bittel filed a notice to appeal from the May 5, 2008, order. On June 10, 2008, the Williamses also filed a notice to cross-appeal the May 5, 2008, order. We shall now consider the consolidated appeals.

I. Interstate Custody Dispute: Does the Georgia adoption divest Kentucky of custody jurisdiction? We say "No."

▉ The Williamses claim that the Georgia decree of adoption renders the Daviess Circuit Court custody orders moot. Although M.K. currently resides in Georgia, Kentucky custody orders were in effect at the time of the adoption. Therefore, we must determine whether Kentucky lost jurisdiction of the custody proceedings.

The Uniform Child Custody Jurisdiction Act (UCCJA) was enacted in 1968 by the

---

5. The trial court found that the Williamses' motion was not properly brought before the court because it lacked the evidentiary support required, and denied their motion.

6. Georgia law prohibits parties who are not related by blood to the child from intervening in an adoption proceeding. *McDonald v. Hester*, 115 Ga.App. 740, 155 S.E.2d 720, 721 (1967).

Kentucky legislature to avoid jurisdictional conflict and competition in custody matters. In 2004, the Kentucky legislature repealed the UCCJA and replaced it with the Uniform Child Custody and Juvenile Enforcement Act (UCCJEA) in order to comply with the federal Parental Kidnapping Prevention Act (PKPA), 28 U.S.C.A. § 1738A. *Wallace v. Wallace*, 224 S.W.3d 587, 589 (Ky.App.2007). The Act is codified in KRS 403.800 through 403.880. While the UCCJEA retained much of the rationale of the UCCJA, the UCCJEA introduced the concept of "exclusive, continuous jurisdiction." KRS 403.824 provides:

(1) Except as otherwise provided in KRS 403.828, a court of this state which has made a child custody determination consistent with KRS 403.822 or 403.826 has exclusive, continuing jurisdiction over the matter until:

(a) A court of this state determines that neither the child, nor the child and one (1) parent, nor the child and a person acting as a parent have a significant connection with this state and that substantial evidence is no longer available in this state concerning the child's care, protection, training, and personal relationships; or

(b) A court of this state or a court of another state determines that the child, the child's parents, and any other person acting as a parent do not presently reside in this state.

In *Moore v. Asente*, 110 S.W.3d 336 (Ky.2003), the Kentucky Supreme Court found that the UCCJA governed adoption proceedings because they were transfers of custody. However, KRS 403.802 specifically exempts adoptions from the UCCJEA. The Williamses argue that this exemption relinquishes jurisdiction of all custody proceedings to the Georgia courts.

While the UCCJEA does not apply to adoptions, Bittel has never claimed that Kentucky should have jurisdiction over the adoption. Nor does Bittel challenge the validity of the Georgia adoption. Instead, Bittel argues that Kentucky retains jurisdiction of the custody matters. We agree, but we also recognize that jurisdiction includes the discretionary power to decline to exercise jurisdiction and defer to a more convenient forum. Our reading of both the UCCJEA and PKPA persuades us that exclusive, continuous jurisdiction of the custody matters remains in Kentucky as long as Bittel resides in Kentucky and maintains a significant relationship with M.K. *Mauldin v. Bearden*, 293 S.W.3d 392 (Ky.2009); KRS 403.824. Therefore, we conclude that the Georgia adoption decree does not invalidate or alter the Daviess Circuit Court's custody orders.

The Williamses successfully circumvented the spirit of the law. Their actions create the precise problems that the UCCJEA and the PKPA attempted to avoid; viz., interstate custody disputes and competition. This loophole cannot be closed by our Court, only by legislative action.

II. De Facto Custodianship: Must Bittel continuously meet the de facto custodian requirements in order to maintain standing in custody proceedings? We say "No."

The Williamses also claim that Bittel has no standing in the custody proceedings because he was improperly designated as a de facto custodian.[7] KRS 403.270(1)(a) describes a de facto custodian as, "a person who has been shown by clear

---

7. Although Bittel was named a de facto custodian in 2000, when M.K. was less than three years old, the Williamses did not contest the designation until now. The Williamses claim that they are M.K.'s primary residential custodian and sole financial supporters, which eliminates Bittel's eligibility as a de facto custodian.

and convincing evidence to have been the primary caregiver for, and financial supporter of, a child who has resided with the person for a period of six (6) months or more if the child is under three (3) years of age[.]" The Williamses argue that Bittel never met that standard.

We cannot ignore that M.K. resided with Bittel and her mother for the first eighteen months of her life and with Bittel and the Williamses following Kennedy's death. While Bittel has never been M.K.'s sole source of financial support, Kennedy and Bittel intermingled their money and provided for M.K. with those intermingled funds. These facts are of minimal importance, however, since joint custody was established and maintained for over eight years.

While Bittel's de facto custodian status was the basis for the trial court's award of joint custody, Bittel's standing to participate in the custody proceedings is derived from his status as a joint custodian. There is no requirement under Kentucky law that a non-parent who is granted custodial rights due to his or her designation as a de facto custodian must maintain the de facto custodian status in order to maintain standing as a joint custodian. Such a requirement would place an unfair burden upon the non-residential joint custodian.

The Williamses rely on *Sullivan v. Tucker*, 29 S.W.3d 805 (Ky.App.2000), to support their attack on Bittel's de facto custodial status. This reliance is misplaced. In *Sullivan*, our Court declined to answer whether de facto custodians have a right to participate in future custody hearings. *Sullivan* differs from this case because Bittel not only participated, but was granted joint custody rights. Although *Sullivan* is easily distinguished from the case at hand, *Sullivan* reminds us that the purpose of de facto custodianship is to provide standing in custody matters to non-parents who have a taken on a parental role in the life of a child whose custody is in dispute. *Id.* at 808.

In order to contest Bittel's custody rights, the Williamses' only recourse was to petition the court for a modification of the custody arrangement. Although the Williamses filed a modification motion, they failed to present any evidence to suggest that Bittel's status as joint custodian is not in M.K.'s best interest, as required by KRS 403.340. Therefore, the motion was properly denied.

III. The Inconvenient Forum Issue: Could the Daviess Circuit Court properly condition its deference to Georgia courts on custody and visitation issues by providing that its prior orders regarding Bittel's joint custodianship and visitation are not affected? We say "Yes."

Clearly a trial court may defer jurisdiction to another court under the inconvenient forum clause of the UCCJEA, KRS 403.834(2). The statute provides:

Before determining whether it is an inconvenient forum, a court of this state shall consider whether it is appropriate for a court of another state to exercise jurisdiction. For this purpose, the court shall allow the parties to submit information and shall consider all relevant factors, including:

(a) Whether domestic violence has occurred and is likely to continue in the future and which state could best protect the parties and the child;

(b) The length of time the child has resided outside this state;

(c) The distance between the court in this state and the court in the state that would assume jurisdiction;

(d) The relative financial circumstances of the parties;

(e) Any agreement of the parties as to which state should assume jurisdiction;

(f) The nature and location of the evidence required to resolve the pending litigation, including testimony of the child;

(g) The ability of the court of each state to decide the issue expeditiously and the procedures necessary to present the evidence; and

(h) The familiarity of the court of each state with the facts and issues in the pending litigation.

Our review of the statute raises questions concerning the trial court's decision to defer jurisdiction. The court did not make specific findings as to each of the mandatory factors. Therefore, we cannot ascertain the weight assigned to each factor or the logic behind the court's decision. But because neither party moved the trial court for more specific findings, we cannot address the issue. Kentucky Rules of Civil Procedure (CR) 52.04.

Moreover, we believe the trial court had authority to include the final sentence in its order entered on May 5, 2008, to wit: "However, this Court's previous orders are not affected in any manner as they refer to Mr. Bittel's joint custodianship of [M.K.] and the visitation rights resulting therefrom."

KRS 403.834(3) provides:

If a court of this state determines that it is an inconvenient forum and that a court of another state is a more appropriate forum, it shall stay the proceedings upon condition that a child custody proceeding be promptly commenced in another designated state and may impose any other condition the court considers just and proper.

We conclude that the trial court's imposition of the condition set out in the above-quoted final sentence of its order entered on May 5, 2008, is a just and proper condition to its decision to defer to Georgia's courts on the issue of Bittel's custody and visitation rights with M.K. Whether and to what extent the Georgia courts will enforce the "previous orders" of the Daviess Circuit Court are issues not before us.

Finally, although the issue is not raised on appeal, we note that the order entered on May 5, 2008, does not expressly "stay the [Daviess Circuit Court] proceedings upon condition that a child custody proceeding be promptly commenced in another designated state[,]" which KRS 403.834(3) requires. If this issue is raised in the trial court, an appropriate amendment to the order entered on May 5, 2008, would appear to be warranted.

For the reasons stated above, we affirm the Daviess Circuit Court orders entered on December 6, 2007, and May 5, 2008.

ALL CONCUR.