KLINE, J.
12This is an appeal by petitioner, D.C.M., the stepfather of the minor children, H.B. and Z.B., whose petition for intrafamily stepparent adoption was dismissed by the juvenile court[2] for lack of subject matter jurisdiction following the sustaining of a declinatory exception filed by M.T.B., the biological father of H.B. and Z.B. For the following reasons, we affirm.
FACTS AND PROCEDURAL HISTORY
M.T.B. and R.S.M., the biological parents, were married in Marion County, Mississippi, on September 20, 2002. Their union produced two children who were born in Hattiesburg, Mississippi: H.B. on July 23, 2002, and Z.B. on January 22, 2004 (hereinafter referred to as the “children”). M.T.B. and R.S.M. were divorced on June 28, 2006, and a final judgment of divorce was signed by the Chancery Court of Marion County, Mississippi (“Mississippi Chancery Court”). Originally, M.T.B. and R.S.M. had joint legal custody of the children, with R.S.M. having physical custody of both children and M.T.B. having reasonable visitation.
On May 23, 2007, R.S.M. married D.C.M. in Pearl River, Louisiana, and they have continuously lived in Louisiana. It is undisputed that M.T.B. has continuously lived in Mississippi throughout the duration of his marriage, the divorce, and the custody disputes, and that he continues to reside in Mississippi.
At some point, R.S.M. made allegations against M.T.B. that he had sexually abused H.B.[3] The record does not contain any factual data about how the allegations were made. However, on August 13, 2007, the Mississippi Chancery |sCourt issued an order granting temporary emergency relief and ordered that R.S.M. be “enjoined from making the same or similar allegations of sexual abuse as to the minor children” and from “subjecting the minor chil *167 dren to any more medical examinations for the same or similar allegations of sexual abuse.” On September 2, 2008, a judgment was entered by the Mississippi Chancery Court, modifying the visitation rights of M.T.B. and reverting back to the joint legal custody of the final judgment of divorce, with R.S.M. having primary physical custody.[4]
In 2008, M.T.B. was indicted by the Circuit Court of Marion County, Mississippi (“Mississippi Circuit Court”), for the inappropriate touching of H.B. between the dates of November 1, 2006 and January 7, 2007, in violation of Section 97-5-23 of the Mississippi Code of 1972, as amended.[5]
On December 18, 2008, R.S.M. filed an emergency petition for stay and temporary restraining order and protective order in Mississippi to prevent M.T.B.’s Christmas visitation with his children for five days in December 2008, as provided in the previous order. On December 19, 2008, the Mississippi Chancery Court denied the relief R.S.M. sought, which then allowed M.T.B. to have Christmas visitation with his children. On the same day, December 19, 2008, R.S.M. filed a temporary restraining order and a petition for protection from abuse in the 22nd Judicial District Court (“Louisiana Court”), Parish of St. Tammany, State of Louisiana, Division “B.” The temporary restraining order against M.T.B. was granted by the Louisiana Court. M.T.B. claims that the order of protection of the | Louisiana Court also prohibited him from interfering with the physical custody of the children until July 16, 2010.[6]
After Christmas 2008, M.T.B. filed a motion for contempt in the Mississippi Chancery Court on January 5, 2009, because R.S.M. had refused to allow M.T.B. the previously ordered Christmas visitation. On June 4, 2010, the Mississippi Circuit Court issued an Order of Nolle Prosse regarding the claim made against M.T.B. for the touching of H.B. On August 24, 2010, M.T.B. filed a “Motion to Enforce Visitation and Citation for Contempt of Parental Interference and Violation of Court Order” against R.S.M. in the Mississippi Chancery Court alleging he was being denied visitation with the children. An agreed temporary order was issued by the Mississippi Chancery Court on December 21, 2010, which ordered “meaningful visitation” between the children and M.T.B., child support payments by M.T.B., the cooperation of both parties, and other relevant orders.
On January 5, 2011, D.C.M., who is currently married to R.S.M., filed a petition for intrafamily stepparent adoption in the juvenile court of the 22nd Judicial District Court, Div. “L,” St. Tammany Parish, Louisiana (“Louisiana Adoption Case”), which is the subject matter of the instant appeal.
On January 25, 2011, M.T.B. filed a motion to enforce the temporary order and for contempt in the Mississippi Chancery Court alleging R.S.M. had failed to comply at all with that court’s order of December 21, 2010. On January 27, 2011, following a conference between the attorneys for M.T.B., R.S.M., and the appointed Guardian Ad Litem, the Mississippi Chancery Court issued an order confirming that its *168 previous order of December 21, 2010, requiring (1) “meaningful visitation” between the children and (2) child support payments by M.T.B., (3) the cooperation of both parties, and (4) other relevant | Borders, was in full force and effect, and that it governed the relationship of M.T.B. and R.S.M. at that time. The Mississippi Chancery Court further ordered that the Louisiana Adoption Case was void and that Mississippi retained jurisdiction over the children.
At the time the Louisiana Adoption Case was filed, an action to terminate the parental rights of M.T.B. was pending in the Mississippi Chancery Court. On February 15, 2011, M.T.B. filed a declinatory exception raising the objection of lack of subject matter jurisdiction and answer to the petition for intrafamily stepparent adoption in the Louisiana Adoption Case. On March 21, 2011, the juvenile court overruled M.T.B.’s declinatory exception raising the objection of lack of subject matter jurisdiction, denied M.T.B.’s request for the court to decline to exercise subject matter jurisdiction, and stayed the adoption proceedings until R.S.M.’s motion to terminate the parental rights of M.T.B. was heard in the Mississippi Chancery Court. A judgment was signed accordingly on April 5, 2011.
The Mississippi Chancery Court held a hearing on R.S.M.’s petition to terminate the rights of M.T.B. and signed an extensive judgment entitled “Final Judgment” on August 19, 2011, which addressed numerous aspects of the case but denied R.S.M.’s request to terminate the parental rights of M.T.B.[7] The Final Judgment also ordered R.S.M. to execute a ne exeat bond “in the amount of the judgment of arrearage of child support owed by [M.T.B.] and that that arrearage shall be held for that bond, until [R.S.M.] shall demonstrate compliance with the judgments and orders of this Court.”
D.C.M. filed a motion to recuse the juvenile court judge in the Louisiana Adoption Case, and the judge voluntarily recused herself on June 5, 2012. The | (¡Louisiana Adoption Case was then transferred to Division “K,” and on August 3, 2012, M.T.B. filed declinatory exceptions raising the objections of lack of subject matter jurisdiction and lis pendens and an alternative motion to stay.[8] On August 15, 2012, D.C.M. and R.S.M. filed an ex parte motion for emergency jurisdiction pursuant to La. R.S. 13:1816, which was denied by the juvenile court on the same day. The juvenile court also denied, on August 16, 2012, D.C.M.’s previously filed motion and order for a Watermeier hearing[9] and a request for expedited consideration. D.C.M. filed an emergency writ with this court, which was denied on August 17,-2012.
The juvenile court heard M.T.B.’s decli-natory exceptions and motion for stay on August 15, 2012, and signed a judgment on *169 September 10, 2012, sustaining the declina-tory exception raising the objection of lack of subject matter jurisdiction. This appeal followed.

ASSIGNMENT OF ERROR

D.C.M. assigns only one error: namely, that the juvenile court erred in granting M.T.B.’s exception of lack of subject matter jurisdiction when the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), La. R.S. 13:1801 et seq., effective August 2007, expressly states that it does not govern adoption proceedings. Generally, the UCCJEA does not permit a court to modify a child custody determination of another state except under specific circumstances. La. R.S. 13:1815. Louisiana Revised Statute 13:1803 specifically provides:
This Part does not govern an adoption proceeding or a proceeding pertaining to the authorization of emergency medical care for a child.
IvD.C.M. claims that his adoption petition is not governed by the UCCJEA and that the juvenile court erroneously sustained M.T.B.’s exception of lack of subject matter jurisdiction.

SUBJECT MATTER JURISDICTION

“Jurisdiction is the legal power and authority of a court to hear and determine an action or proceeding involving the legal relations of the parties, and to grant the relief to which they are entitled.” La. Code Civ. Proc. art. 1. “Jurisdiction over the subject matter is the legal power and authority of a court to hear and determine a particular class of actions or proceedings, based upon the object of the demand, the amount in dispute, or the value of the right asserted.” La.Code Civ. Proc. art. 2. The jurisdiction of a court over the subject matter of an action or proceeding cannot be conferred by consent of the parties or waived; a judgment rendered by a court which has no jurisdiction over the subject matter of the action or proceeding is void. See La.Code Civ. Proc. arts. 3 and 925; Boudreaux v. State, Dept. of Transp. and Development, 01-1329 (La.2/26/02), 815 So.2d 7, 12. The issue of subject matter jurisdiction addresses the court’s authority to adjudicate the cause before it; the issue may be considered at any time, even by the court on its own motion, at any stage of an action. Boudreaux, 815 So.2d at 13.
A court’s power to grant relief is premised upon its subject matter jurisdiction over the case or controversy before it. Louisiana Land Acquisition, LLC v. Louisiana Dept. of Environmental Quality, 11-2037 (La.App. 1 Cir. 7/18/12), 97 So.3d 1144, 1145, writ granted on other grounds, 12-1872 (La.11/16/12), 103 So.3d 358. In fact, before considering the merits in any appeal, appellate courts have a duty to examine subject matter jurisdiction. Id. Whether a district court has subject matter jurisdiction over a case is subject to a de novo |sreview. Otwell v. Otwell, 10-1176 (La.App. 3 Cir. 2/9/11), 56 So.3d 1232, 1233-34.
The issue before this court is whether the jurisdictional provisions contained in the UCCJEA govern an intra-family adoption proceeding instituted in this state, when another state has continuing jurisdiction over custody matters involving the children. Out-of-state child custody determinations are specifically governed by the UCCJEA, which sets forth specific rules regarding the recognition, modification, and enforcement of child custody determinations. Guzman v. Sartin, 09-1677 (La.App. 1 Cir. 12/23/09), 31 So.3d 426, 429. The purpose of the UC-CJEA is to provide clearer standards by which states can exercise original jurisdiction over a child custody determination. Id.
*170 The UCCJEA has varying jurisdictional provisions, but the predominant provision relevant to this matter is La. R.S. 13:1815, which applies to the jurisdiction of a Louisiana court to modify the child custody determination of another court, and provides:
Except as otherwise provided in R.S. 13:1816, a court of this state may not modify a child custody determination made by a court of another state unless a court of this state has jurisdiction to make an initial determination under R.S. 13:1813(A)(D or (2) and:
(1) The court of the other state determines it no longer has exclusive, continuing jurisdiction under R.S. 13:1814 or that a court of this state would be a more convenient forum under R.S. 13:1819; or
(2) A court of this state or a court of the other state determines that the child, the child’s parents, and any person acting as a parent do not presently reside in the other state.
Under the express terms of the UC-CJEA, Louisiana does not have subject matter jurisdiction over a custody issue if another state has rendered a child custody determination. Otwell, 56 So.3d at 1234-35; see La. R.S. 13:1813-1819. |flD.C.M. claims that none of the jurisdictional provisions of the UCCJEA apply to the present case because La. R.S. 13:1803 specifically provides:
This Part does not govern an adoption proceeding or a proceeding pertaining to the authorization of emergency medical care for a child.
Therefore, D.C.M. alleges that the UC-CJEA does not apply at all to the adoption proceeding he has brought to adopt the children in this case, who have been the subject of extensive litigation in both Mississippi and Louisiana. D.C.M. claims that he has brought an intrafamily adoption proceeding pursuant to La. Ch.C. art. 1243, which allows a stepparent to adopt a child.
Although it did not address jurisdiction, we find the third circuit case of C.D.J. v. B.C.A., 11-378 (La.App. 3 Cir. 10/5/11), 74 So.3d 300, to be instructive in the instant matter. In C.D.J., a stepfather and mother filed a petition for intrafamily adoption and asserted that the father’s consent was unnecessary, pursuant to La. Ch.C. art. 1245, because the father had failed to pay support for a period of at least six months. The father objected to the adoption, arguing that no custody order was in effect.[10] The trial court sustained the father’s exception raising the objection of no cause of action, and dismissed the stepfather and mother’s petition for intrafamily adoption. On that same date, the trial court signed a stipulated judgment awarding the mother and father joint custody, with the mother designated as the domiciliary parent. Thereafter, the stepfather and mother appealed the dismissal of their petition for intrafamily adoption. On appeal, the third circuit affirmed the trial court. With regard to the adoption, the third circuit stated:
We agree with the trial court that it was not the intent of the law for the provisions of this article [La. Ch.C. art. 1245] to apply to the case where there is on-going litigation relating to custody. (Emphasis added).
| WC.D.J., 74 So.3d at 301. The court reasoned that since there was on-going litigation as to custody, the trial court correctly *171 dismissed the petition for intrafamily adoption.
The juvenile court in the present case sustained M.T.B.’s exception raising the objection of lack subject matter jurisdiction and adopted the arguments of his counsel, as follows:
[R.S.M.] has asked the Mississippi court to terminate [M.T.B.’s] parental rights for failure to communicate with his children and failure to support this [sic] children. And the Court had a trial on those issues in August of 2011 and rejected those arguments by [R.S.M.].... The Court has decided it will retain jurisdiction over custody of these children. [M.T.B.] still lives in Mississippi. Mississippi has jurisdiction under the UCCJEA act. And it has a right, ... it has determined to decide the issue of custody.
What [D.C.M.] is trying to do by filing a stepparent adoption in this case is abrogate that right that Mississippi definitely has. If you could simply move to another state and apply to adopt a child, effectively terminating the parental rights that are at issue in the other state, there would [be] no restriction— ... it would undercut the validity of any judgment of custody issued by a court with competent jurisdiction.
You made the comment during our pretrial conference that an adoption is the ultimate custody determination. If an adoption is granted in this case, it would terminate [M.T.B.]’s rights. Which flies in the face of the Mississippi judgment, which has specifically refused to do so, on exactly the same grounds that they are asking you to do so here. (Emphasis added).
We also agree with these reasons and espouse them as our own.
While D.C.M. points out that the UCCJEA does not apply to adoptions, he provides no jurisprudence recognizing the subject matter jurisdiction of one court over an adoption when a pending custody matter is proceeding in another jurisdiction. The only case relied upon by D.C.M. after the enactment and effective date of the UCCJEA is In re Intrafamily Adoption of L.M.C., 09-0885 (La.App. 5 Cir. 3/23/10), 39 So.3d 643, which held that the biological father’s consent is not necessary to an intrafamily adoption in certain circumstances. In Jurisdiction, however, was not an issue in that case. The party petitioning the court for adoption carries the burden of proving a parent’s consent is not required under the law. In re Mulvihill, 10-0826 (La.App. 4 Cir. 1/19/11), 56 So.3d 418, 421 (citing In re Fleming, 01-1405 (La.App. 5 Cir. 4/30/02), 817 So.2d 371, 376). In this case, D.C.M. alleges that M.T.B.’s consent to the adoption is not necessary, under La. Ch.C. art. 1245, because M.T.B. failed to pay child support for a period longer than six months. We agree, however, with the third circuit in C.D.J. that La. Ch.C. art. 1245 is not meant to apply to on-going custody litigation.
The only jurisdiction provision with regard to adoption is La. Ch.C. art. 1180, which discusses venue and jurisdiction in adoption. Prior to 2001 La. Acts, No. 910, § 1, La. Ch.C. art. 1180 only pertained to venue. 2001 La. Acts, No. 910, § 1 added paragraph C, which references jurisdiction, but only in the event of a voluntary surrender by a parent. Therefore, the only jurisdiction contemplated by the adoption provisions is where there is a voluntary surrender approved by the court. In the present case there has been no voluntary surrender. The statute does not address jurisdiction in an adoption case where there is no voluntary surrender and custody is pending in another jurisdiction.
*172 In the present case, the biological parents of the children have engaged in years of extensive litigation in the Mississippi Chancery Court regarding the custody of their children and the termination of parental rights. Now, the stepfather has filed the instant intrafamily adoption proceeding in Louisiana. A very similar factual scenario took place in Williams v. Bittel, 299 S.W.3d 284 (Ky.App.2009). Arguing over a child in Williams were the boyfriend of the deceased mother (“Bit-tel”) and the decedent’s sister and brother-in-law (“the Williamses”). The child was born in Kentucky, and a Kentucky court awarded Bittel and the Williamses joint custody of the child. The Williamses were designated the primary | ^residential custodians with liberal visitation given to Bittel. Eventually, the Williamses moved to Georgia where they adopted the child. Before the adoption, the custody orders in Kentucky were still in effect. The UCCJEA in effect in Kentucky also exempted adoptions from its provisions.
The Kentucky court in Williams determined that Kentucky retained the exclusive, continuing jurisdiction over the custody orders as long as Bittel resided in Kentucky and maintained a significant relationship with the child. Williams, 299 S.W.3d at 288. Therefore, the Kentucky court recognized that despite the language of the UCCJEA excluding adoptions from its provisions, Kentucky still retained exclusive, continuing jurisdiction over custody cases that originated in its jurisdiction. The court observed that jurisdiction “includes the discretionary power to decline to exercise jurisdiction and defer to a more convenient forum.” Id. The Kentucky court also noted:
The Williamses successfully circumvented the spirit of the law. Their actions create the precise problems that the UCCJEA and the PKPA attempted to avoid: viz., interstate custody disputes and competition.[11]
Id. The Kentucky court further recognized that the problem of stepparent adoption and pending custody actions in different states needs to be corrected and stated, “This loophole cannot be closed by our Court, only by legislative action.” Id.
In the instant case, the legal rights of M.T.B. will be terminated by the adoption of his biological children should D.C.M. be allowed to proceed with the adoption. La. Ch.C. art. 1256 provides the effect of a final adoption decree:
A. Except as otherwise provided by Paragraph C of this Article, upon a final decree of adoption, the parents of the child whose rights have not been previously terminated by a surrender or a judgment of termination and all other blood relatives of the 11sadopted child are relieved of all their legal duties and divested of all their legal rights with regard to the adopted child including the right of inheritance from the adopted child and his lawful descendents, and the adopted child and his lawful descendents are relieved of all legal duties and divested of all legal rights with regard to the parents and other blood relatives. (Emphasis added).
Other jurisdictions have determined that the termination of parental rights is the ultimate custody determination.
Thus by definition, a termination of parental rights works the ultimate custody and visitation determination as to the *173 party whose rights'are terminated. See Souza v. Superior Court, 193 Cal.App.3d 1304, 238 Cal.Rptr. 892, 895 (1987) (“Patently, a stepparent adoption, with its potential for completely terminating the natural father’s custodial rights, is a custody-determining custody procedure ... ”); In re Adoption of Asente, [90 Ohio St.3d 91] 734 N.E.2d [1224,] 1232 [ (2000]) (“We fail to see how a termination of appellants’ parental rights ... did not, for all purposes, determine custody of [the child].”); In re Adoption of N.M.B., [564 Pa. 117] 764 A.2d 1042 ( []2000) (“[I]t is hard to imagine any more of a modification to a custody and visitation determination than to terminate these rights altogether.”).
In re: E.H.H., 16 P.3d 1257, 1259 (Utah App.2000).
We do believe and so hold that the adoption exemption contained in the UCCJEA does not allow one state to permit an intrafamily adoption while another state has continuing, exclusive jurisdiction over the custody of children. The intent of the adoption exclusion in the UCCJEA contained in La. R.S. 13:1803 is not to accomplish by adoption what has been denied by an initial court of jurisdiction, that is, the termination of a biological parent’s rights. The Mississippi Chancery Court has declined, despite reasonable opportunity, to terminate M.T.B.’s parental rights. D.C.M. (and R.S.M. through the stepfather, D.C.M.) is attempting to do the very same thing that the Mississippi Chancery Court has refused to do, namely, to terminate the parental rights of M.T.B. Under the circumstances of this case, this court cannot allow an adoption, which would terminate the parental rights of a biological parent, including all custodial rights, when a court of another state with continuing jurisdiction has refused to do so.
|uIt is apparent from an extensive review of the record that neither party has complied with the Mississippi Chancery Court’s orders regarding custody of the children in this ease. We agree with the third circuit that La. Ch.C. art. 1245 does not apply “where there is on-going litigation relating to custody.” C.D.J., 74 So.3d at 301. Louisiana will not allow its laws to be used to circumvent the orders of another state and terminate the parental rights of a biological parent when a court with continuing jurisdiction with regard to custody has refused to do so. The petitioner cannot use the adoption exclusion to thwart the entire spirit and purpose of the UCCJEA, which was to avoid interstate custody disputes.

CONCLUSION

The juvenile court correctly sustained the declinatory exception raising the objection of lack of subject matter jurisdiction over an intrafamily adoption when custody proceedings were still pending in another state with continuing jurisdiction. We affirm the juvenile court’s judgment. All costs' of this appeal are assessed against petitioner, D.C.M.
AFFIRMED.

. The 22nd Judicial District Court exercises original juvenile jurisdiction for its territorial jurisdiction pursuant to La. Ch.C. art. 302(2). While there is no separate juvenile court, Divisions "K” and "L” of the 22nd Judicial District Court are limited to juvenile and family matters. See La. R.S. 13:621.22; 2008 La. Acts, No. 344, § 2.

.This court does not have access to the entire record of the custody proceedings in Mississippi. However, the record before us does contain many judgments and orders that refer to previously filed motions, from which this court is able to ascertain previous events.

.Apparently, prior to this judgment, custody had been altered. In a memorandum to the juvenile court. M.T.B. claimed that the Mississippi' Chancery Court had signed an ex parte order on January 24, 2007 awarding sole custody to R.S.M. However, no such order appears in the record before us.

. The exact date of the indictment is unknown because the copy in the record is undated.

. M.T.B. makes such claims in his brief but the order is not in the record.

. A "Motion for Contempt for Failure to Pay Child Support and Petition for Termination of Parental Rights” is referred to by M.T.B., but is not contained in the record before this court. The Final Judgment issued by the Mississippi Chancery Court does address the petition of R.S.M. to terminate M.T.B.’s parental rights.

. M.T.B.'s pleading was erroneously captioned "Declinatory Exception of Lack of Subject Matter Jurisdiction, Declinatory Exception of Res Judicata, and Alternative Motion to Stay.”

.See Watermeier v. Watermeier, 462 So.2d 1272 (La.App. 5th Cir.), writ denied, 464 So.2d 301 (La.1985). A Watenneier hearing is a hearing in chambers, outside the presence of the parents, but in the presence of their attorneys, with a record of the hearing to be made by the court reporter, to inquire as to the competency of a child to testify as to custody.

. ' For reasons not explained in the opinion, a support order had been entered in C.D.J., but there had been "no order as to custody” prior to the institution of the intrafamily adoption proceeding,

. The UCCJEA was enacted to comport with the Parental Kidnapping Prevention Act (PKPA), codified in 28 U.S.C. § 1738A. The principal purpose of the federal statute is to enjoin a state from exercising jurisdiction if a custody action is properly pending in another state. Hughes v. Fabio, 07-1008 (La.App. 5 Cir. 3/25/08), 983 So.2d 946, 951 n. 4.