FAMILIES AND FRIENDS OF     *     NO. 2021-C-0674
LOUISIANA'S
INCARCERATED CHILDREN;     *     COURT OF APPEAL
JANE DOE, ON BEHALF OF
HERSELF AND HER MINOR     *     FOURTH CIRCUIT
CHILD, JOHN DOE; AND
MARY ROE, ON BEHALF OF     *     STATE OF LOUISIANA
HERSELF AND HER MINOR
CHILD, JOSEPH ROE     *

VERSUS     *

    * * * * * * *

CITY OF NEW ORLEANS AND
LATOYA CANTRELL, IN HER
OFFICIAL CAPACITY AS
MAYOR OF NEW ORLEANS

*JCL*

**LOBRANO, J., DISSENTS AND ASSIGNS REASONS.**

I respectfully dissent.

Petitioners/Relators, Family and Friends of Louisiana's Incarcerated Children, Jane Doe, on behalf of herself and her minor child, John Doe, and Mary Roe, on behalf of herself and her minor child, Joseph Roe ("Relators"), seek appellate review of the November 9, 2021 judgment ("the Judgment") granting an exception of lack of subject matter jurisdiction filed by defendants/respondents, the City of New Orleans' and its mayor, Latoya Cantrell (collectively referred to as "the City"), and remanding the matter from the Civil District Court for the Parish of Orleans ("District Court") to the Juvenile Court for the Parish of Orleans ("Juvenile Court").

The City filed a declinatory exception arguing that District Court lacks subject matter jurisdiction. La. C.C.P. art. 925(A)(6). The court must accept the allegations set forth in Relators' petition as true for the purpose of ruling on the exception, particularly if no evidence is introduced, which is determinative of the issues. *See State v. Illinois Central Railroad Company*, 04-1789, p. 13 (La. App. 1

1

Cir. 12/22/05), 928 So.2d 60, 68; *Banks v. Carl Ott Poles & Piling, Inc.*, 440 So.2d 803, 805 (La. App. 1 Cir. 1983). However, the court is not required to accept conclusory factual allegations or allegations of law as true for purposes of the exception if they are contrary to the record or the law. *See Kirby v. Field*, 04-1898, p. 6 (La. App. 1 Cir. 9/23/05), 923 So.2d 131, 135, *writ denied,* 05-2467 (La. 3/24/06), 925 So.2d 1230. The determination of whether a district court has subject matter jurisdiction over a case is subject to *de novo* review. *In re D.C.M.*, 13-0085, pp. 7-8 (La. App. 1 Cir. 6/11/13), 170 So.3d 165, 169; *TD*X Assocs., LP v. Louisiana Dep't of Env't Quality*, 2020-0081, p. 3 (La. App. 1 Cir. 11/9/20), 2020 WL 6557758, at *2.

Based on my *de novo* review and, for purposes of the exception only, my acceptance of certain factual allegations and allegations of law set forth in Relators' petition as true, I would vacate the judgment and allow Relators time to amend their petition as I find that Relators are able to cure certain jurisdictional deficiencies discussed *infra* through amendment or dismissal of certain claims. When the grounds pleaded in the declinatory exception "may be removed by amendment of the petition or other action of plaintiff, the judgment sustaining the exception shall order the plaintiff to remove them within the delay allowed by the court…" La. C.C.P. art. 932(A). I find vacating the judgment and granting Relators a delay to amend their pleadings the appropriate remedy in the interest of expedited justice for the following reasons:

Pursuant to La. Ch. C. art. 302, District Court is strictly prohibited from exercising jurisdiction over "juvenile matters" because Orleans Parish has a specially created juvenile court.[1] Juvenile Court enjoys not only Article 303(1) exclusive, original juvenile jurisdiction over delinquency proceedings, but also

---

[1] *See* La. R.S. 13:1566.

Article 303(11) jurisdiction over children as may be provided by law.[2] La Const. art. V, § 19 mandates that Juvenile Court shall make all determinations relative to "the detention, and the custody of a person who is alleged to have committed a crime prior to his seventeenth birthday." I find that Article 303(11) was enacted not only to address disputes arising out of adoption proceedings but also to address disputes arising out of delinquency proceedings. Article 303(1)'s grant of exclusive, original jurisdiction over delinquency proceedings "is crippled unless the juvenile court also possesses the exclusive authority to resolve ancillary disputes arising out of"[3] delinquency proceedings. Such ancillary disputes include all disputes arising out of the detention and the custody of unadjudicated youth who are detained pursuant to a continued custody order of a juvenile court during the pendency of their delinquency proceedings.

The majority finds, *inter alia*, that Relators' petition is "primarily a civil rights action" relative to the emergency removal of unadjudicated youth who are detained pursuant to a continued custody order of Juvenile Court at the New Orleans Juvenile Justice Intervention Center ("JJIC") during the pendency of their delinquency proceedings ("the Detained Youth"). The majority further finds and I agree that the subject matter of Relators' petition and claims is not only the legality of the emergency detainment of the Detained Youth at an "adult prison" but also the legality of any Cooperative Endeavor Agreement(s) ("CEA") between the City and the State of Louisiana, through its Department of Public Safety and Corrections ("the State"), relating to JJIC's emergency evacuation policy, particularly the

---

[2] La. Ch. C. arts. 303(1) and 303(11).
[3] La. Ch. C. art. 303, Comment-2001.

3

CEA dated May 7, 2021 and entitled "Local Level Emergency Evacuation and Housing Partnership" ("the Policy").[4]

Thus, District Court's jurisdiction in the case *sub judice* is limited to only those disputes that relate to the City's authority to adopt and enforce the Policy. Juvenile Court maintains jurisdiction not only over the delinquency proceedings and modifications of continued custody orders of the Detained Youth but also over all ancillary disputes arising out their delinquency proceedings or detainment orders. I find that a portion of Relators' allegations involves the direct violation of the continued custody orders and ancillary disputes arising out to their delinquency proceedings.

The majority finds and I agree that Relators' petition "does involve the interpretation of La. Ch. C. art. 822." Article 822 provides:

> A. Following the hearing required by Article 819, the court may order a child alleged to have committed a delinquent act or alleged to have violated probation or parole for a delinquent act, continued in custody in a licensed public or private facility for juveniles, if licensure is required by law for such a facility, or in a private home subject to the supervision of the court or in a juvenile detention center.
>
> B. The court shall not place a child alleged to be delinquent *in the custody* of either the department of Children and Family Services or the department of Public Safety and Corrections prior to adjudication.
>
> C. No *child subject to the jurisdiction of the juvenile court* shall be held in an adult jail or lockup.

La. Ch. C. art. 822 (emphasis added). The majority finds that District Court enjoys jurisdiction over this matter because Relators did not allege "a specific violation of La. Ch. C. art. 822 concerning a court's order for continued custody of a specific juvenile in a delinquency proceeding." The

---

[4] I note that the CEA dated May 7, 2021 refers to Dixon Correctional Institute while the affidavits submitted by Relators refer to Elayn Hunt Correctional Center. Nonetheless, the pertinent factual allegation of Relators accepted as true for the purpose of this exception by all parties is that JJIC's emergency evacuation policy requires that during emergencies the Detained Youth would be housed in state run facility that also houses adults.

4

majority accepts as true Relators' allegation of fact that the City "created and implemented" the Policy. The record is void as to whether Juvenile Court, as required by law, authorized the adoption and implementation of the Policy of JJIC to house the Detained Youth at an "adult prison"[5] in an emergency. It is unclear whether the majority even considered this fact and associated laws. However, a review of these omitted facts and applicable laws is crucial to perform a complete and efficient appellate review of this matter and to allow for expedited justice; thus, I will make a brief review of the applicable law.[6]

La Const. art. V, § 19 mandates that "[t]he determination of guilt or innocence, *the detention* . . . of a person who is alleged to have committed a crime prior to his seventeenth birthday shall be pursuant to special juvenile procedures which shall be provided by law." La Const. art. V, § 19 (emphasis added). The constitution and aforementioned statutory law affords Juvenile Court the exclusive authority to enforce or reject an emergency housing policy at a juvenile detention facility that places unadjudicated children subject to the jurisdiction of the juvenile court in a detention facility during an emergency. Thus, Juvenile Court has the exclusive authority to

---

[5] This dissent does not interpret the term "adult prison" as used in Article 822(C), which was enacted "to bring Louisiana law into compliance with the requirements of the Juvenile Justice and Delinquency Prevention Act" of 1993. La. Ch. C. art. 822, Comment-1991. *See* 18 U.S.C.A. § 5039 ("No juvenile committed, whether pursuant to an adjudication of delinquency or conviction for an offense, to the custody of the Attorney General may be placed or retained in an adult jail or correctional institution in which he has regular contact with adults incarcerated because they have been convicted of a crime or are awaiting trial on criminal charges. Every juvenile who has been committed shall be provided with adequate food, heat, light, sanitary facilities, bedding, clothing, recreation, counseling, education, training, and medical care including necessary psychiatric, psychological, or other care and treatment. Whenever possible, the Attorney General shall commit a juvenile to a foster home or community-based facility located in or near his home community.").

[6] The record is not fully developed, and I recognize that some inferences are improper to make when reviewing an exception. Courts have found that a remand to the district court is warranted to allow for an efficient determination of the facts upon evidence and testimony. *See e.g. Beasley v. Nezi, LLC*, 2016-1080, p. 4 (La. App. 1 Cir. 9/8/17), 227 So.3d 308, 315-16 (Holdridge, J., dissenting)(where the majority made an improper inference as to a factual determination that a manager's actions were employment-related). Due to the severity of the allegations presented in this case and the fast approaching 2022 hurricane season, a remand is not appropriate to timely address the alleged infringements.

enforce the detainment of the Detained Youth, not the City. Although the City has the authority to create an emergency housing policy for its facilities and to negotiate with the State to partner with the City to utilize State facilities, the law does not authorize the City to unilaterally determine the detention and the custody of the Detained Youth in an emergency. Only Juvenile Court has the exclusive authority to make such detainment decisions for unadjudicated youths during the pendency of their delinquency proceedings. This is supported by the fact that the Detained Youth are not in the custody of "either the department of Children and Family Services or the department of Public Safety and Corrections prior to adjudication." La. Ch. C. art. 822(B).

I find that the majority erred in conflating the creation of the CEAs and emergency policies between the City and the State with that of its enforcement by Juvenile Court as it relates to the Detained Youth's detainment. Taking into consideration the effects of the relief sought (declaratory judgment, mandamus, and injunction), I find that the analysis into the subject matter of Relator's petition must be performed in a two-step process. The creation of the Policy between the City and the State must be separately analyzed from its enforcement and implementation. Regarding the City, Relators can seek a declaratory judgment in District Court declaring that the City's enforcement of the Policy without Juvenile Court's approval is illegal and request the issuance of an injunction prohibiting the unilateral enforcement of the Policy by the City and a mandamus ordering the City to develop a new emergency evacuation policy prior to the 2022 hurricane season. If District Court declares that the enforcement of the Policy was without proper Juvenile Court authorization, then the court may grant injunctive and mandamus relief. This type of relief sought pertaining to the City is subject to the jurisdiction of District Court, as it does not involve the interpretation of La. Ch. C. art. 822 or a

6

juvenile matter. It involves interagency agreements and providers' Emergency and Safety Plans,[7] and the scope of the City's authority in its operation of JJIC during an emergency.[8]

If District Court finds that Juvenile Court properly authorized the Policy, then District Court is without jurisdiction to grant further mandamus or injunctive relief as requested by Relators. Juvenile Court retains jurisdiction over all disputes requiring the interpretation of La. Ch. C. art. 822 and involving a delinquency proceeding or any ancillary disputes arising out of the proceeding. La. C.C.P. art. 1878 provides that "[f]urther relief based on a declaratory judgment or decree may be granted whenever necessary or proper.  The application therefor shall be by petition to *a court having jurisdiction to grant the relief.*"  *Id.* (emphasis added).

Any other relief sought with respect to the actual detainment of the Detained Youth, a continued custody order, or an interpretation of La. Ch. C. art. 822 is subject to Juvenile Court jurisdiction.  The nature of all emergency evacuation policies at detention centers is such they attach to and are applicable to all detainees at a detention facility.  Thus, if it is declared that Juvenile Court authorized the adoption and enforcement of the Policy, then the Policy in effect and by operation of law modifies all continued custody orders of the Detained Youth existing at the time of the authorization and supplements all continued custody orders rendered after the authorization. In other words, when the Detained Youth are detained at JJIC through a continued custody order of Juvenile Court, JJIC's policies are made a part thereof.

Relators allege that the Policy continues to be in effect at JJIC and that a family of a Detained Youth was unaware of the Policy until the

---

[7] La. Admin Code. tit. 67, pt. V, § 6969 ("Emergency and Safety").
[8] La Const. art. V, § 19.

morning of Hurricane Ida. Attorneys for the Detained Youth can file a motion for preadjudication relief in the delinquency proceeding of each of the Detained Youth under La. Children's Code art. 865 and object to the continued custody of the Detained Youth in JJIC due to the Policy. Moreover, such a motion in Juvenile Court may be granted "without a contradictory hearing when mover is clearly entitled thereto without supporting proof." La. Ch. C. art. 865(C). Additionally, attorneys for the Detained Youth can file discovery motions under La. Ch. C. art. 866 to ascertain the emergency housing policies in place at JJIC and whether Juvenile Court authorized the Policy's enforcement at JJIC.

The law allows the Detained Youth to seek expedited juvenile justice relief not only in Juvenile Court through preadjudicated motion and discovery practice but also in District Court. District Court enjoys limited jurisdiction to decide Relators' request for a declaratory judgment but only as to whether the City illegally enforced the Policy without a Juvenile Court order. Moreover, if so found, Relators can request District Court to compel the City to develop a new emergency housing policy prior to the 2022 hurricane season. All other claims for relief must be bought in Juvenile Court as they relate to the Detained Youth's continued custody orders and interpretation of La. Ch. C. art. 822.

Thus, based upon my review of the writ application and the applicable law, I find that a portion of the Relators' petition falls under the exclusive jurisdiction of Juvenile Court. I would vacate the judgment and allow Relators time to amend their petition. Relators are able to cure the aforementioned jurisdictional deficiencies through amendment or dismissal of certain claims. Therefore, I find granting Relators a delay to amend their pleadings the appropriate remedy.

8