RENDERED: JULY 25, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-0246-ME

R.S. APPELLANT

v.

APPEAL FROM SHELBY CIRCUIT COURT
HONORABLE S. MARIE HELLARD, JUDGE
ACTION NO. 15-J-00213-001

COMMONWEALTH OF KENTUCKY,
CABINET FOR HEALTH AND
FAMILY SERVICES; A.M., A MINOR
CHILD; H.N.; J.M.; L.P.; S.P.; AND
SHELBY COUNTY ATTORNEY'S
OFFICE APPELLEES

OPINION
VACATING, REVERSING,
AND REMANDING

** ** ** ** **

BEFORE: COMBS, A. JONES, AND KAREM, JUDGES.

COMBS, JUDGE: This case involves complex issues involving the custody of a child -- intermingled are a DNA proceeding, de facto custodianship, and guardianship.

In 2017, the Shelby Circuit Court, Family Division, awarded custody of the minor child, A.M., to her father in a DNA[1] proceeding. From 2017-2024, the child lived with her father in Iowa. In November 2024, the father died. Appellant, the child's paternal grandmother, who lives in Illinois, retrieved the child and filed a petition for guardianship in Illinois. While the guardianship proceeding was pending, the Appellees -- non-relatives claiming de facto custodian status under a 2018 Agreed Order -- filed an emergency *ex parte* motion for custody in the Shelby Family Court DNA case. The family court then granted sole custody to Appellees.

The Illinois Grandmother filed a motion to intervene in Shelby Family Court seeking to set aside the 2018 Agreed Order and to vacate the Emergency Custody Order. The family court concluded that Grandmother did not have standing and denied her motion. For the reasons set forth herein, we vacate the family court's Order granting Appellees' emergency *ex parte* motion for sole custody; we reverse the denial of Grandmother's motion to intervene; we reverse the determination that Appellees qualify as current de facto custodians by virtue of the 2018 Agreed Order; and we remand for the court to comply with the provisions of the UCCJEA[2] as discussed below.

---

[1] Dependency, Neglect, and Abuse.

[2] Uniform Child Custody Jurisdiction and Enforcement Act.

A chronology of events is necessary for an understanding of the matter before us.

**12/07/2015**: The Cabinet filed a DNA petition in Shelby Family Court, Case No. 15-J-00213-001, in the interest of A.M., a female child born in early 2015 (hereinafter the child). According to the petition, natural mother, H.N., had an extensive history of drug use and had other children who were previously removed from her care. The Cabinet received a report that child had been left with the putative father, J.M., who had had child in his care for five or six months. J.M. lived with his mother, L.P., who was helping him care for child. However, no testing had been completed to verify that J.M. was the biological father.

**12/13/2015**: H.N., natural mother, waived formal adjudication and stipulated neglect or abuse (used drugs in a caretaking role).

**12/21/2015:** DNA testing **excluded** J.M. as the child's biological father. "The probability of paternity is 0%."

**01/15/2016**: Temporary Removal and Adjudication Hearing Orders were entered placing child in the temporary custody of J.M.'s parents, L.P. and S.P. (hereinafter Mr. & Mrs. P.). The family court appointed a warning order attorney for E.S., whom mother had named as a possible father.

**03/22/2016**: Warning order attorney reported that E.S. was located and that he would gladly submit to a DNA test.

**03/30/2016**:  DNA testing ordered for E.S.

**03/31/2016**:  Disposition Order reflects that the child remain in Mr. & Mrs. P.'s custody.  Written underneath their names on the form Order is the following:  "Relationship:  (De Facto Custodian)[.]"

**06/30/2016**:  DNA established E.S. (hereinafter Father) to be the child's father. The court ordered ICPC[3] to be completed on behalf of the child.

**07/27/2016**:  The family court ordered a home evaluation of Father at his address in Iowa.  Further, the court ordered that "the Kentucky Court will retain jurisdiction over the [child.]"  The Cabinet was ordered to "maintain an open case to serve as agent for the court throughout the interstate process to ensure compliance with the Interstate Compact."  The court also directed the Cabinet to keep the court appropriately informed as to the progress.

**02/20/2017**:   The Cabinet's Review Report reflects that it received confirmation on January 30, 2017, that Father was approved by the Iowa Interstate Compact for placement of the child.  The Cabinet had no concerns and was seeking for the child to be placed with Father at that time.

**05/25/2017**:  Father filed a motion to set aside the March 31, 2016, Disposition Order "whereby the Court entered 'De Facto Custodian' under the names of [Mr. and Mrs. P.] who currently have custody of [the child]." Father

---

[3] Interstate Compact on the Placement of Children Request.

explained that the ICPC, completed January 23, 2017, recommended that the child be placed with him and that the Cabinet and Commonwealth agreed, but the court nonetheless left the child in Mr. & Mrs. P.'s custody. However, the court noted that KRS[4] 403.270(1)(b) states that "[a] person shall not be a de facto custodian until a court determines by clear and convincing evidence that the person meets the definition of de facto custodian established in paragraph (a) of this subsection[,]" -- and that **no hearing had** been held to make that determination as to Mr. & Mrs. P. Therefore, Father requested immediate custody of the child.

06/12/2017: The family court entered Findings of Fact, Conclusions of Law and Order (FFCLO) granting Father's motion and awarding him custody of his child. The court explained that a review of the recorded proceedings from the dispositional hearing showed that it: (a) had inquired as to the relationship of Mr. & Mrs. P. and was told they were non-relatives who had cared for the child since birth; and (b) asked the parties if there were any objections to the court's putting de facto custodian in the relationship box without having made a finding. There were no objections.

The court further explained that the provisions of KRS 403.270 governing de facto custodian status are not triggered unless the biological parent has abdicated the role of primary caregiver. The family court found that Father

---

[4] Kentucky Revised Statutes.

had not abdicated that role; as soon as he was aware that he could be the father, he took steps to establish paternity and obtain custody. Thus, Mr. and Mrs. P. could not be found to be de facto custodians. The court was unpersuaded by Mr. & Mrs. P.'s contention argument that no one had objected to their designation as de facto custodians, arguing that because Father's paternity had not been established yet, he had no standing to object at that time. The court did not hear any evidence at the disposition hearing that Mr. & Mrs. P. were de facto custodians. "No parties were sworn, no testimony was taken."

The family court, *sua sponte*, struck that portion of the March 30, 2016, Disposition Order naming Mr. & Mrs. P. as de facto custodians, finding that "the March 30, 2016, disposition order should be set aside. [Father] has established paternity, and has an approved ICPC, both reasons of an extraordinary nature justifying relief from the order." The Court hoped the parties could "work together for the benefit and best interest of the child and make this change less stressful on all parties."

**06/16/2017**: Mr. & Mrs. P. filed a motion to alter, amend, or vacate the family court's 6/12/2017 FFCLO.

**6/21/2017**: At motion hour, the court correctly reiterated that Mr. and Mrs. P. "are not de facto custodians until I hear evidence and determine that they are." The court afforded Mr. & Mrs. P. the opportunity to be heard at a hearing the

-6-

next day to determine once and for all if they were de facto custodians. However, the parties reached an agreement instead.

**6/22/2017**: A docket Order states that: "Parties reached agrmt. [Counsel] to tender typed Order; Cabinet released. Case remanded."

The family court's file contains a handwritten memorandum captioned, "AGREEMENT," date-stamped filed 6/22/2017. It is signed by the parties, their counsel, and a Guardian *Ad Litem*, but it was not entered as an Order by the court. The memorandum provides for Mr. & Mrs. P. to have some visitation and phone/video contact with the child, but it makes no mention of their having de facto custodian status.

**10/11/2017**: A typewritten Agreed Order allows Mr. & Mrs. P. visitation with the child in October 2017, some telephone contact, and some limited supervised contact with J.M. (former putative father), but it makes no mention of de facto custodian status.

**09/05/2018**: The family court granted Father's counsel's motion to withdraw.

**09/19/2018**: Mr. & Mrs. P. filed a motion stating that they had prepared an Order for Father to sign with respect to the court's 6/22/2017 Order -- but that Father had not responded.

**10/31/2018**:  A docket sheet Order reflects "Agd Order to be tendered[.]"

**11/29/2018**:  An Agreed Order entered November 29, 2018, states that Mr. & Mrs. P. had cared for the child from April 2015 to June 2017 "and are the child's de facto custodians."  Further, it noted that Father is the "biological and legal father of the child."  The Agreed Order reflects that the parties had reached an agreement on June 22, 2017, regarding "parenting time" for Mr. & Mrs. P. to have time with the child during spring and summer breaks, Thanksgiving, and Christmas.

*After the entry of this Agreed Order, there is no further activity in the Shelby Family Court DNA file for over six years -- until December 17, 2024, as set forth below*.

**11/11/2024**:  Father died at home in Iowa.  According to the obituary,[5] survivors include his parents, R.S. and E.S., Sr., the child, as well as other children, brother and sisters, a grandmother, cousins, nieces and nephews.

**11/19/2024**:  Appellant now before us, R.S., is Father's mother/the child's paternal grandmother (Grandmother).  R.S. filed a petition for appointment as guardian of the child in the Will County, Illinois Probate Court, No.

---

[5] Record on Appeal (ROA), p. 162.

2024CR000484.[6]  The petition reflects that:  Grandmother is a citizen of Illinois; the child's address is in Bolingbrook, Illinois; the person having custody of the child is Grandmother at the same Illinois address; other adult relatives of the child entitled to notice are:  H.N. (natural mother), at a last-known address in Louisville; that appointment of a guardian is necessary because Father died on 11/11/2024; and H.N. is unable to care for the child who "was a neglected or abused child, because mother used drugs in a caretaking role."  A notice of hearing set for 12/23/2024 reflects it was mailed to H.N.[7]

**11/26/2024**:  A screenshot of a text exchange shows that Mrs. P. had asked Grandmother about the child -- if she had started back to school and the date of her Christmas break.  Grandmother replied that the child had started school "yesterday," that the last day before Christmas break was December 20th, and that school resumed January 7th. Grandmother was "wondering if you all wanted to pick her up and bring her back for Christmas and I'll bring her to you and pick her up for the summer.  I know the way you and [Father] had it set worked [*sic*.]"[8]

**12/14/2024**:  The text exchange continues as follows:

Mrs. P.:  "Good afternoon, our plan is to pick [the child]
up Friday the 20th at about your 2:30 your time."

---

[6] Records from the Illinois guardianship proceeding were filed as Exhibit "A" to Grandmother's motion to intervene.

[7] ROA pp. 169-172, 174.

[8] Exhibit "B" to Grandmother's motion to intervene, ROA, p. 212.

Grandmother: "Ok and are you bringing her back Friday January 3rd or Saturday January 4th, 2025[?]"

Mrs. P.: "Saturday the 4th about the same time."

Grandmother: "Ok thank you[.]"[9]

**12/17/2024**: Mr. & Mrs. P., by counsel, filed an "EMERGENCY EX PARTE MOTION FOR CUSTODY" in the Shelby Family Court DNA case seeking an "emergency ex parte Order granting them sole custody of the minor child . . . ." The motion states, *inter alia*, that the court had granted custody to Father on June 12, 2017, and notes that after lengthy negotiations, the parties reached a compromise and that **their agreement** entered on November 29, 2018, provided that Mr. & Mrs. P. "are the defacto [*sic*] custodians of [the child.]" The motion continues as follows in relevant part:

> [Father] suddenly passed away on November 11, 2024 at the age of 35, at his home in Clinton, Iowa (Obituary attached). At that time, [Grandmother], traveled to Iowa, picked up [the child], and took her back to Bolingbrook, Illinois, which is a suburb of Chicago where she lives. [Grandmother] has informed the Movants that she intends to keep [the child] there, with her.
>
> Movants herein are the only individuals who have a legal custodial right to care for [the child]. This court has continued jurisdiction over the matter[10] and there is no

---

[9] Exhibit "C" to Grandmother's motion to intervene, ROA, p. 213.

[10] Presumably, this assertion refers to KRS 403.824 of the UCCJEA, which provides, in relevant as follows:

known proceeding in Iowa where the natural father resided, or in Illinois, where the child has been for the past few weeks. . . . [11]

**12/18/2024**: The Shelby Family Court entered an Order stating that the court had previously determined that Mr. & Mrs. P. were de facto custodians in regard to the child and had agreed with Father to a schedule whereby the child continued to have significant contact with Mr. & Mrs. P. in Shelby County. The court ordered that: "Mr. & Mrs. P. are granted sole custody of [the child] . . . Any party aggrieved by this Order may file an original CI action in the Shelby Family Court, Shelby County, Kentucky to address same."

(1) Except as otherwise provided in KRS 403.828, a court of this state which has made a child custody determination consistent with KRS 403.822 or 403.826 has exclusive, continuing jurisdiction over the determination until:

(a) A court of this state determines that neither the child, nor the child and one (1) parent, nor the child and a person acting as a parent have a significant connection with this state and that substantial evidence is no longer available in this state concerning the child's care, protection, training, and personal relationships; or

(b) A court of this state or a court of another state determines that the child, the child's parents, and any other person acting as a parent do not presently reside in this state.

[11] But, in fact there was a proceeding pending in Illinois -- namely, Grandmother's petition for guardianship.

-11-

**12/23/2024**:  An Order of the Illinois Probate Court reflects that the matter was before the Court on Grandmother' petition for appointment of guardianship.  Grandmother, *pro se,* was present.  An attorney appeared as Friend of Court. Father's Iowa death certificate had not been completed yet.  The Illinois Court continued the matter to January 2, 2025, "for status on notice to mother of the Petition for Guardianship/Plenary hearing on Petition[.]"[12]

**12/24/2024**:  A copy of a screenshot of a text exchange between Grandmother and natural mother, H.N., reflects that Grandmother wanted to know if H.N. (natural mother) had received the copy of the Illinois petition for guardianship that she had sent to her.  H.N. replied that she had sent a response back to Grandmother; further, natural Mother noted that she did not like the reason Grandmother was trying to get guardianship because she (H.N.) had not done drugs in over 7 years.  Grandmother explained that she had not said that -- that was merely the information on the court papers that Father had gotten from Kentucky when he had sought and obtained custody.[13]

**12/26/2024**:  In the Illinois guardianship proceeding, Grandmother executed and filed a form captioned "ACCEPTANCE OF OFFICE OF GUARDIAN OF PERSON OF MINOR(S)" as follows in relevant part:

---

[12] ROA, pp. 170, 175.

[13] ROA, p. 201.

By accepting this office, I understand that I must abide by the duties and responsibilities required by law as set forth in the Illinois Probate Code at 755 ILCS 5/11-13 which specifically include the following:

Initial each:

. . .

 /s/  I understand that I may not remove the minor(s) from the State of Illinois for a period in excess of thirty (30) days without prior Court Order authorizing the removal of the minor(s).  I understand that prior to the Court's approval of the removal of the minor(s) from the State of Illinois, I must demonstrate that the removal of the minor(s) is in the minor(s)'s best interest.

 /s/  I understand that I cannot transfer physical custody of the minor(s) to any other person including the minor(s) biological parents without a court order allowing the transfer.

Grandmother also executed and filed another form captioned, "ACCEPTANCE OF OFFICE OF GUARDIAN OF THE ESTATE OF MINOR(S)," as follows in relevant part:  that "I understand that I must appear on behalf of the minor/s [*sic*] in any legal proceeding regarding the minor(s), but that I may not enter into a criminal plea agreement on behalf of the minor(s)."

**01/02/2025**:  The Illinois Court entered an Order appointing Grandmother as the Plenary Guardian of the Estate and Person of the child.  The

Order reflects that H.N., the natural mother, was present by Zoom and consented to the Petition.[14]

"LETTERS OF OFFICE," dated 01/02/2025 and certified on 01/07/2025, by the Illinois Circuit Court Clerk, show that Grandmother has been appointed Guardian of the Estate/Person of the child "and is authorized to have under direction of the Court, the care, management and investment of the minor's estate **and the custody of the minor**, and to do all acts required of him [*sic*] by law. (emphasis added).

**01/09/2025**: Grandmother filed a copy of the certified letters of office in the Shelby Family Court case.[15] The corresponding entry on the printout of the family court's docket states: "*[GRANDMOTHER] CAME INTO OUR OFFICE REGARDING [THE CHILD]. MADE A COPY OF ILLINOIS CIRCUIT COURT LETTER STATING SHE HD [SIC] CUSTODY OF THE MINOR.*" (Uppercase and italics original.)

Additionally, Grandmother, by and through counsel, filed an entry of appearance as well as a motion to intervene and to alter, amend, or vacate. Grandmother sought to intervene pursuant to CR[16] 24.01 "in order to assert the

---

[14] ROA, p. 209.

[15] ROA, p. 166.

[16] Kentucky Rules of Civil Procedure.

-14-

defenses set forth in the Motion hereinafter, on the grounds that she is entitled to custody as the paternal grandmother . . . and the duly-appointed Guardian of the child by Order of the Will County, Illinois Probate Court."

Pursuant to CR 60.02, Grandmother requested that the family court strike the November 29, 2018, Agreed Order declaring Mr. & Mrs. P. de facto custodians and that it vacate the December 18, 2024, Order granting them sole custody.

Grandmother argued that Mr. & Mrs. P. did not have the necessary standing in the above-styled action and that their December 17, 2024, *ex parte* motion did not meet emergency custody order requirements. She also argued that Mr. & Mrs. P. do not qualify as de facto custodians **as no such finding** had been made as required by KRS 403.270(1)(b) -- and that they remain ineligible for de facto status, citing *Sullivan v. Tucker*, 29 S.W.3d 805 (Ky. App. 2000).

Grandmother argued that granting her custody is in the child's best interest. Grandmother explained that for five of the years during which Father had custody, she resided within five minutes of his residence in Clinton, Illinois, and was the emergency contact for the child. Furthermore, after Father died on November 11, 2024, Grandmother assumed the role of primary caregiver for the child at her residence in Will County, Illinois, where the child has been enrolled in school since November 25, 2024. Based upon her understanding that she would be

-15-

the primary caregiver, Grandmother filed the petition for appointment as guardian in the Will County, Illinois, Probate Court.  The child's mother --  whose parental rights have ***not*** been terminated -- was given notice of and attended the January 2, 2025, hearing on the petition and consented to Grandmother's appointment as the child's guardian.  "[O]ut of respect for the visitation arrangement" Father had maintained with Mr. & Mrs. P., Grandmother coordinated an exchange so that the child could spend the Christmas holiday with Mr. & Mrs. P. until January 4, 2025.  However,

> [Grandmother] was made aware on December 30, 2024 by [Mr. and Mrs. P.] that they had filed a Motion in the above-styled action requesting sole custody of the minor child, resulting in the entry of the Order on December 18, 2024.
>
> [Grandmother] states she informed [Mrs. P.] that the minor child was to be returned on January 4th, 2025 as was agreed to by both parties, to which [Mrs. P.] indicated she did not intend to do so.
>
> As of the date of filing [Mr. & Mrs. P.] have continued to refuse to return the minor child to [Grandmother's] custody.

Grandmother requested that the family court:  "allow her to intervene in the above-styled action; strike the Agreed Order entered November 29, 2018; vacate the Order entered December 18, 2024; and grant [Grandmother] immediate and sole custody of [the child]."

**01/22/2025**: At motion hour, the family court denied Grandmother's motion and entered the following docket Order:

FINDINGS OF FACT

Father (who is now deceased) entered into an Agreed Order with [Mr. & Mrs. P.] declaring that they were "de facto custodians . . ." which was entered on November 29, 2018, and which Agreed Order set forth timesharing arrangements for Mr. and Mrs. [P.], and which Order was never appealed. [Mr. & Mrs. P.] became the only custodians by virtue of the November 29, 2018 Order once the Father passed away.

The Motion filed by [Grandmother] is hereby overruled [*sic*] as the Father was free to enter into an agreed order declaring [Mr. & Mrs. P.] were de facto custodians, and he did so, and that Order, never being appealed stands. [Grandmother] not being a named custodian, lacks standing to attack the Order declaring [Mr. & Mrs. P.] as de facto custodians.

This is a final and appealable Order.[17]

On February 21, 2025, Grandmother filed a notice of appeal to this Court. On appeal, Grandmother argues that Mr. and Mrs. P.: (1) did not have proper standing to file their Emergency Ex Parte Motion for Custody in the underlying DNA action -- nor did they comply with the requirements for an

---

[17] In her Appellant's brief, Grandmother contends -- and Mr. & Mrs. P. agree, as do we -- that the subject Order is final and appealable despite omission of the "no just reason for delay" language required when multiple claims or parties are involved. CR 52.04. Grandmother explains that the January 22, 2025, docket sheet Order affirmed the December 18, 2024, Emergency Custody Order and the de facto custodian status of Mr. & Mrs. P. while denying the only outstanding motion made by Grandmother -- to intervene and to alter, amend, or vacate the December 18, 2024, Order.

emergency custody order when filed in a DNA action; (2) do not qualify as de facto custodians because no determination has been made as **required** by KRS 403.270; and (3) do not meet the statutory requirement to be named as de facto custodians of the child.

We address these arguments together.  Grandmother first contends that any claim to custody made by Mr. & Mrs. P. as alleged de facto custodians should have been filed as a separate civil action under KRS 403.270 *et seq.*, as well as pursuant to the provisions of the UCCJEA.[18]  In such an action, Grandmother would have been afforded the right to notice and an opportunity to be heard "as the 'person having physical custody of the child' at the time of its filing" under KRS 403.830.[19]  Nevertheless, Grandmother asserts that she remained entitled to that

---

[18] Kentucky has adopted the UCCJEA which "is codified in KRS 403.800–403.880 and governs disputes concerning this state's jurisdiction to decide child custody and visitation matters." *Wahlke v. Pierce*, 392 S.W.3d 426, 429 (Ky. App. 2013).

[19] KRS 403.830 provides that in relevant part:

> (1) Before a child custody determination is made under KRS 403.800 to 403.880, notice and an opportunity to be heard in accordance with the standards of KRS 403.812 shall be given to all persons entitled to notice under the law of this state as in child custody proceedings between residents of this state, any parent whose parental rights have not been previously terminated, and any person having physical custody of the child.
>
> . . .
>
> (3) The obligation to join a party and the right to intervene as a party in a child custody proceeding under KRS 403.800 to 403.880 are governed by the law of this state as in child custody proceedings between residents of this state.

-18-

right and opportunity in relation to the custody motion even though it was filed in the DNA case because the provisions of the UCCJEA apply to a child custody determination in a child custody proceeding which "includes a proceeding for . . . neglect, abuse, [or] dependency. . . ." KRS 403.800(4).

The threshold issue is whether the family court erred in denying Grandmother's motion to intervene pursuant to CR 24.01 after having concluded that "not being a named custodian, [Grandmother] lacks standing to attack the Order declaring [Mr. & Mrs. P.] as de facto custodians."

"We review the denial of a motion to intervene as a matter of right for clear error. However, a court's evaluation of the timeliness of a motion to intervene is reviewed under an abuse of discretion standard." *Hazel Enterprises, LLC v. Community Financial Services Bank*, 382 S.W.3d 65, 67 (Ky. App. 2012) (citations omitted).

> CR 24.01(1) provides for a four-prong test regarding rulings on motions to intervene when a statute has not conferred an unconditional right to intervene:
>
> Upon timely application anyone shall be permitted to intervene in an action . . . (b) when the applicant claims an interest relating to the property or transaction which is the subject of the action and is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless that interest is adequately represented by existing parties.

-19-

*Carter v. Smith*, 170 S.W.3d 402, 407 (Ky. App. 2004).

The family court did not address the timeliness of Grandmother's motion to intervene; however, we conclude that it was indeed timely. According to the motion, Mr. & Mrs. P. informed Grandmother **on December 30, 2024**, of the proceeding they had filed in Shelby Family Court. Grandmother filed her motion to intervene **ten days later** on January 9, 2025.

The second prong of CR 24.01(1) asks whether "the applicant claims an interest relating to the property or transaction which is the subject of the action." Kentucky law requires that said interest "must be a present substantial interest in the subject matter of the lawsuit, rather than an expectancy or contingent interest." *Carter*, 170 S.W.3d at 410 (internal quotation marks and footnote omitted). Grandmother has a present substantial interest -- she was duly appointed as Guardian by the Illinois Probate Court. As shown by the Letters of Office, Grandmother "is authorized to have . . . the custody of the minor, and to do all acts required of him [*sic*] by law." Among those acts, Grandmother must appear on behalf of the minor child in any legal proceeding involving the minor.

We quickly dispose of the remaining two prongs. Clearly, disposition of the Shelby Family Court proceedings may impair or impede Grandmother's ability to protect her interest, and the other parties have no reason to represent or to

protect Grandmother's rights. Thus, based upon our review, we hold that the denial of Grandmother's motion to intervene was clearly erroneous.

Grandmother contends that in addition to the emergency custody motion's being a "misfiled pleading," the family court's order fails to comply with KRS 620.060. The statute is entitled "Emergency custody orders," and provides in relevant part that:

> (1) The court for the county where the child ordinarily resides or will reside or the county where the child is present may issue an ex parte emergency custody order when it appears to the court that removal is in the best interest of the child and that there are reasonable grounds to believe, as supported by affidavit or by recorded sworn testimony, that one (1) or more of the following conditions exist and that the parents or other person exercising custodial control or supervision are unable or unwilling to protect the child:
>
> (a) The child is in danger of imminent death or serious physical injury or is being sexually abused;
>
> (b) The parent has repeatedly inflicted or allowed to be inflicted by other than accidental means physical injury or emotional injury. This condition shall not include reasonable and ordinary discipline recognized in the community where the child lives, as long as reasonable and ordinary discipline does not result in abuse or neglect as defined in KRS 600.020(1); or
>
> (c) The child is in immediate danger due to the parent's failure or refusal to provide for the safety or needs of the child.

Mr. & Mrs. P.'s motion did not allege -- and the family court did not find -- that there were reasonable grounds to believe any of the enumerated conditions in KRS 620.060(1)(a)-(c) existed and that Grandmother was unwilling or unable to protect the child. Moreover, Mr. & Mrs. P. did not submit an affidavit with the motion as the statute requires[20] -- nor did the family court make a finding that that granting sole custody to Mr. & Mrs. P. was in the best interest of the child.

Grandmother also notes that the December 18, 2024 Custody Order "has been in effect since its entry with no subsequent actions or filing submitted" to Shelby Family Court despite the provisions of KRS 620.060(3) and (5):

> (3) An emergency custody order **shall be effective no longer** than seventy-two (72) hours, exclusive of weekends and holidays, unless there is a temporary removal hearing with oral or other notice to the county attorney and the parent or other person exercising custodial control or supervision of the child, to determine if the child should be held for a longer period. . . .
>
> (5) Within seventy-two (72) hours of the taking of a child into custody without the consent of his parent or other person exercising custodial control or supervision, a petition shall be filed pursuant to this chapter.

(Emphasis added.)

---

[20] Kentucky Family Rules of Procedure and Practice (FCRPP) 18(1) also requires that "[a]ny request for an emergency custody order in a dependency, neglect or abuse case shall be in writing and shall be accompanied by an affidavit . . . ."

This Court addressed a very similar issue in *Robison v. Theele*, 461 S.W.3d 772 (Ky. App. 2015). There, the Appellant, Chip, and his wife Holli had joint custody of their two children with Holli designated as primary residential custodian. After Holli died, maternal grandparents sought entry of a "*status quo ex parte order*" to maintain the visitation schedule when Holli was alive. The trial court entered the requested order the same day. Chip argued that the trial court erred in issuing the "*status quo ex parte order.*" *Id.* at 744. This Court agreed and explained that:

> [Appellees/maternal grandparents] have not provided any legal authority for a "*status quo ex parte order*," and we have been unable to find any. Essentially, it appears to be an emergency motion for temporary custody. Kentucky Revised Statute[s] (KRS) 620.060 governs emergency custody orders. Under the statute, emergency *ex parte* orders are only permissible when: [one of the grounds in enumerated in KRS 620.060(1)(a)-(c) exists.]
>
> . . .
>
> **The** [trial court's] **sparse findings fell remarkably short of the statutory requirements. The motion did not include any allegations of danger or abuse, and the trial court did not recognize that deficiency in the pleading**. On appeal, the [appellees/maternal grandparents] do not present any proof suggesting otherwise. On these grounds alone, **we can only conclude that the order was erroneously entered and that it is, therefore, unenforceable**.
>
> However, we also note that **KRS 620.060(3) provides that an emergency custody order is only**

**effective for seventy-two hours unless a hearing is held regarding the motion. The record shows that no hearing was held during the seventy-two hour period following entry of the order on January 25. Therefore, even if it had been valid when entered, the order expired** before Chip was served . . . .

*Id.* at 766 (emphases added).

In the case before us, the family court's findings in its December 18, 2024, Order fall far short of the statutory requirements. Mr. & Mrs. P.'s motion did not include any allegations of danger or abuse, nor was it accompanied by an affidavit as required by both the statute and FCRPP 18. The family court erred in not recognizing these obvious deficiencies. As in *Robison*, we can only conclude that the December 18, 2024, Order was entered erroneously; therefore, it is unenforceable. Moreover, no hearing was held in the case before us in the seventy-two hour period following entry of the December 18, 2024, Order; thus, even if it had been valid when it was entered, the Order has long since expired and cannot provide a basis for Mr. & Mrs. P. to maintain custody of the child.

Next, Grandmother contends that Mr. & Mrs. P. do not qualify as de facto custodians because no determination was ever made as required by KRS 403.270. In its January 22, 2025, Order the family court found that Father entered into the November 29, 2018, Agreed Order with Mr. & Mrs. P., declaring that they were de facto custodians and that that Order was never appealed. Thus, the

-24-

court held that Mr. & Mrs. P. "became the only custodians by virtue of the November 29, 2018, Order once the Father passed away."

To the contrary, "a finding of de facto custodianship does not thereafter have . . . conclusively presumptive effect." *Sullivan*, 29 S.W.3d at 808. Rather, "determination of de facto custodianship is a matter that must be addressed anew whenever the status is asserted." *Id.* "[T]his Court has consistently held that the status of a *de facto* custodian is not permanent and must be revisited on a case-by-case basis each time the status is asserted." *Gross v. Herrington*, No. 2016-CA-001132-ME, 2017 WL 1041229, at *2 (Ky. App. Mar. 17, 2017).

We, therefore, conclude that the family court erred as a matter of law by determining that Mr. & Mrs. P. became the child's only custodians ***by virtue of the November 29, 2018, Order*** when father died in 2024. We do not address whether or not Mr. & Mrs. P. properly qualified as de facto custodians when the November 29, 2018, Order was entered or at any time thereafter.

Accordingly, we vacate the Shelby Family Court's December 18, 2024, Order granting sole custody of the child to Mr. & Mrs. P., and we reverse its January 22, 2025, Order in its entirety. We remand this case with instructions that the family court grant Grandmother's motion to intervene; we direct the Shelby Family Court to ***immediately*** inform Grandmother and her counsel of the child's status and whether there are any other pending actions regarding the child. We

also direct the family court to communicate ***promptly*** with the Will County Illinois Probate Court regarding this matter pursuant to the provisions of the UCCJEA. We strongly suggest that appointment of a Guardian *Ad Litem* for the child may be appropriate until this matter is fully resolved.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Amy E. Oliver
Shelbyville, Kentucky

BRIEF FOR APPELLEES L.P. AND S.P.:

Alan Q. Zaring
New Castle, Kentucky